THE UNITED STATES DISTRICT COURT

THE DISTRICT OF UTAH

| | |
|---|---|
| GREG ANDERSON,<br><br>        Plaintiff,<br>v.<br><br>JIM RICHARDS, in his individual capacity and in his official capacity and JOHN OR JANE DOE(S) 1 THROUGH 10,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER ADOPTING [27] REPORT AND RECOMMENDATION**<br><br>Case No. 2:21-cv-00726-DBB-DBP<br><br>District Judge David Barlow<br>Chief Magistrate Judge Dustin Pead |

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Greg Anderson and his brother own 70 acres of land in Rush Valley, Utah that has been zoned agricultural land by Tooele County.[1] In 2020, Mr. Anderson began building a structure on the property, "which is 16 feet wide and 52 feet long, and has the potential of being a shed, a tiny house or a manufactured house."[2] On August 12, 2020, defendant Jim Richards, a Tooele County building inspector, "came by the property and said he was placing a stop work order" on the property.[3] A formal Notice of Violation dated August 13, 2020 was subsequently mailed to Mr. Anderson, who received it on August 14, 2020.[4] The Notice of Violation stated that upon inspection, the property was determined to be in violation of "2015 IRC Section R105.1. Permits Required" and "2015 IRC Section R109.1. Types of Inspections."[5] The notice

---

[1] Compl. ¶ 1. The cited facts come from Mr. Anderson's Verified Complaint. Mr. Anderson does not cite to the Complaint or to any other affidavit or sworn declaration in his Motion for Partial Summary Judgment.
[2] Compl. ¶ 2.
[3] Compl. ¶ 19.
[4] Compl. ¶ 19, Exhibit A.
[5] Compl., Exhibit A.

1

called for the following actions to be taken to correct the violations: "1. Stop Work. 2. Remove Improvements. 3. Make application for and obtain the required Building Permit, and other associated approvals."[6]

On December 13, 2022, Mr. Anderson filed suit in this court, alleging eight causes of action against Mr. Richards personally and in his official capacity: (1) gross negligence, (2) conversion, (3) unlawful seizure of property under the Fourth Amendment, (4) denial of due process as required by the Fourteenth Amendment, (5) unlawful taking of property under the Fifth Amendment, (6) denial of constitutional right to build manufactured house and/or tiny house as mandated by Congress, (7) punitive damages, and (8) injunctive relief.[7]

Mr. Richards answered the complaint,[8] after which Mr. Anderson moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[9] The magistrate judge recommended that Mr. Anderson's motion be denied.[10] Additionally, the magistrate judge sua sponte recommended that Mr. Anderson be ordered to amend his Complaint because he is proceeding pro se and it failed to set forth a prima facie case for the alleged causes of action.[11] On June 6, 2022, this court entered an order adopting the magistrate judge's recommendation that Mr. Anderson's motion for judgment on the pleadings be denied.[12] However, the court declined to adopt the magistrate judge's recommendation that Mr. Anderson be ordered to amend his Complaint because that issue was not pending before the court.[13]

---

[6] Compl., Exhibit A.
[7] *See* Compl.
[8] Answer, filed February 1, 2022, ECF No. 7.
[9] Motion for Judgment on the Pleadings, filed February 9, 2022, ECF No. 8.
[10] R. & R. dated May 20, 2022, ECF No. 11 at 12.
[11] *Id.*
[12] Memorandum Decision and Order dated June 6, 2022, ECF No. 12.
[13] *Id.* at 2.

On July 5, 2022, Mr. Anderson filed a Motion for Partial Summary Judgment on his fourth and fifth causes of action.[14] On August 5, 2022, Mr. Richards filed a Motion for Summary Judgment on all claims.[15] The magistrate judge recommended that the cross motions for summary judgment be denied so that the parties could conduct discovery.[16] Both parties objected within the statutory time limit, each arguing that discovery was neither needed nor desired and that the claims could be resolved as a matter of law.[17] Given the history of the case and the unique procedural posture, the court requested that the magistrate judge reconsider the recommendation.[18] The magistrate judge subsequently recommended that Mr. Anderson's Motion for Partial Summary Judgment be denied and that Mr. Richards' Motion for Summary Judgment be granted.[19] Mr. Anderson has objected to the recommendation.[20]

## STANDARD OF REVIEW

When resolving objections to a Report and Recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[21] To trigger this de novo review, an objection must adequately specify the factual and legal issues in dispute.[22] "[G]eneral objection[s] [are] insufficient" to preserve the issue for appellate review.[23] This court "reviews

---

[14] Motion for Partial Summary Judgment, filed July 5, 2022, ECF No. 13. The motion was fully briefed as of August 17, 2022.
[15] Motion for Summary Judgment, filed August 5, 2022, ECF No. 16. The motion was fully briefed as of September 2, 2022.
[16] R. & R. dated December 30, 2022, ECF No. 23.
[17] Plaintiff's Verified Objection to [23] Magistrate Judge Pead's Report and Recommendations, filed January 11, 2023, ECF No. 24; Defendant's Objection to [23] Report and Recommendations, filed January 12, 2023, ECF No. 25.
[18] Docket Text Order dated March 21, 2023, ECF No. 26.
[19] R. & R. dated April 27, 2023, ECF No. 27.
[20] Verified Objection to Magistrate Judge [27] Report and Recommendation ("Objection"), filed May 2, 2023, ECF No. 28.
[21] 28 U.S.C. § 636(b)(1)(C) (2018).
[22] See *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).
[23] *Moore v. Astrue*, 491 F. App'x 921, 923 (10th Cir. 2012) (unpublished) (citing *2121 E. 30th St.*, 73 F.3d at 1060).

3

unobjected-to portions of a report and recommendation for clear error."[24] The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[25]

## DISCUSSION

### I. Mr. Anderson Does Not Object to the Magistrate Judge's Recommendation on the Gross Negligence Cause of Action.

The R. & R. recommends granting Mr. Richards summary judgment on Mr. Anderson's first cause of action for gross negligence on the grounds that Mr. Richards, to the extent he was sued personally for actions he took while performing his duties as a Tooele County employee, is immune from liability under Utah's Governmental Immunity Act.[26] Mr. Anderson's Objection is silent as to any error in the R. & R.'s conclusion that Mr. Richards in his individual capacity is immune from liability under the Act.[27] The court finds no clear error, and accordingly, the court adopts the R. & R.'s reasoning on this count and grants summary judgment for Mr. Richards in his individual capacity on the gross negligence claim.

The R. & R. further recommends granting Mr. Richards summary judgment on the gross negligence claim independent of governmental immunity, which would apply to the claim against Mr. Richards in his official capacity.[28] The Objection identifies no error in the alternate basis the magistrate judge found to recommend summary judgment on the gross negligence

---

[24] *Johnson v. Progressive Leasing*, No. 2:22-cv-00052, 2023 WL 4044514, at *2 (D. Utah June 16, 2023) (citing *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see* Fed. R. Civ. P. 72(b) adv. comm. note to 1983 amend. ("[T]he court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").
[25] *Id.*
[26] R. & R. at 4–6.
[27] *See* Objection.
[28] "Suing individual defendants in their official capacities under § 1983, we've recognized, is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

claim.[29] Finding no clear error, the court also adopts the R. & R.'s reasoning and grants summary judgment on the individual gross negligence claim against Mr. Richards in his official capacity.

## II. Mr. Anderson's Conversion Cause of Action Fails.

The R. & R. also recommends granting summary judgment against Mr. Anderson's second cause of action for conversion on the grounds that Mr. Richards in his individual capacity is immune from liability under Utah's Governmental Immunity Act, which provides that:

> No employee may be joined or held personally liable for acts or omissions occurring:
> (a) during the performance of the employee's duties;
> (b) within the scope of employment; or
> (c) under color of authority.[30]

Mr. Anderson does not dispute the factual basis for the general application of this statute. Instead, he argues that one of the statute's limited exceptions to immunity applies because Mr. Richards engaged in "willful misconduct."[31] The statute defines "willful misconduct" as "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury."[32]

Mr. Anderson's assertion of wrongfulness is his allegation that Mr. Richards' delivery of a "Stop Work Order" under Tooele County's zoning code violates U.C.A. § 15A-1-204(11)(a).[33] That statute states, in relevant part, "a structure used solely in conjunction with agricultural use, and not for human occupancy . . . is exempt from the requirements of the State Construction Code."[34] Mr. Anderson argues that U.C.A. § 15A-1-204(8) further provides that subject to exceptions not at issue here, "or as expressly provided in state law, a state executive branch

---

[29] R. & R. at 6–7.
[30] Utah Code Ann. § 63G-7-202(4).
[31] U.C.A. § 63G-7-202(3)(c)(i).
[32] U.C.A. § 63G-7-102(11).
[33] Objection at 4. *See* Compl., Exhibit A at 26, Notice of Violation.
[34] U.C.A. § 15A-1-204(11)(a).

5

entity or political subdivision of the state may not, after December 1, 2016, adopt or enforce a rule, ordinance, or requirement that applies to a subject specifically addressed by, and that is more restrictive than, the State Construction Code."[35] Mr. Anderson asserts that in combination, these two statutes mean that Tooele County cannot require him to seek a permit to build a shed on agricultural land.[36]

To establish whether the limited exception to the Utah Governmental Immunity Act applies, the court must first decide whether Mr. Richards' delivery of the "Stop Work Order" was wrongful, and if so, whether such wrongful act was intentional and without justification or excuse.

Mr. Anderson has failed to meet his evidentiary and legal burden to establish a wrongful, intentional act that meets the "willful misconduct" exception to the Utah Governmental Immunity Act. As to the law, Mr. Anderson argues without citation to any legal authority that U.C.A. § 15A-1-204(8) and (11) supersede any authority of the Tooele County Land Use Ordinances under which Mr. Richards issued the Notice of Violation of 2015 IRC Sections R105.1 (requiring a building permit) and Section R109.1 (requiring inspections).[37] His argument is simply that state law trumps county ordinances, and that because Mr. Richards should have known this, Mr. Richards' actions meet the definition of willful misconduct.[38] However, the authority for a county's land use ordinances is also granted by state statute, namely U.C.A. § 17-27a-102,[39] and there is no material dispute that at the time Mr. Richards delivered the "Stop

---

[35] U.C.A. § 15A-1-204(8).
[36] Objection at 5.
[37] *Id.* at 4–7, 16–20.
[38] *Id.* at 2, 4–5, 7.
[39] "[T]o accomplish the purposes of this chapter, a county may enact all ordinances, resolutions, and rules . . . that the county considers necessary or appropriate for the use and development of land within the unincorporated area of the county . . . including ordinances, resolutions [and] rules . . . governing . . . uses, . . . structures . . . [and] buildings." U.C.A. § 17-27a-102. Mr. Anderson does not cite and the court was unable to independently locate any

6

Work Order" he was acting within the scope of his employment. Given that the authority for Tooele County's zoning ordinances is also set forth by state statute, Mr. Anderson has failed to prove that as a matter of law Mr. Richards' conduct in performing the duties of his employment to notify and enforce apparent violations of those ordinances was wrongful or an intentional violation of law.[40]

Factually, Mr. Anderson has not properly alleged that the shed he sought to build meets the requirements of agricultural use under U.C.A. § 15A-1-202.[41] That statute requires a use "that relates to the tilling of soil and raising of crops, or keeping or raising domestic animals."[42] The court cannot agree with Mr. Anderson's Objection that it is an undisputed material fact that Mr. Anderson's intent was to build a shed. The Complaint shows otherwise, and the R. & R. incorrectly cites to Mr. Anderson's prior objection in support of the statement, rather than citing to an admission by Mr. Richards.[43] Additionally, the only use asserted for the shed in the Objection is the placing of solar panels to run a well.[44] Mr. Anderson has not met his factual burden to allege, let alone demonstrate an undisputed material fact at the summary judgment stage, a conforming agricultural use for the shed. Accordingly, he has not shown either factually

---

case law that would support his argument that U.C.A. § 15A-1-204(8) and (11) supersede otherwise validly authorized county zoning ordinances of this type.

[40] Without a showing of the legal basis for his claim, it also becomes impossible for Mr. Anderson to demonstrate Mr. Richards intentionally violated the law or otherwise acted intentionally. Mr. Anderson's argument that he repeatedly told defendant he was violating the law is insufficient to demonstrate that Mr. Richards knew he was engaging in legally wrongful conduct. *See* Objection at 4–5.

[41] Mr. Anderson's position in the Opposition is that there is no longer any dispute that the structure he intended to build was a shed, rather than potentially also a "tiny house" or a "manufactured house" as alleged in the Complaint. *See* Compl. ¶¶ 2, 6, 20. Mr. Anderson also appears to have abandoned his earlier arguments about other uses of the structure, calling those arguments "now moot." Objection at 3. The court reiterates that Mr. Anderson's Motion for Partial Summary Judgment is not supported by citations to properly supported facts in the record. *See* Fed.R.Civ.P. 56(c).

[42] U.C.A. § 15A-1-202(1).

[43] R. & R. at 2, citing erroneously to ECF No. 24 p. 3, which is actually Mr. Anderson's Objection to a prior R. & R., rather than a filing by Mr. Richards. Mr. Richards has consistently disputed the fact that Mr. Anderson's intent was always to build an agricultural shed.

[44] Objection at 7. The court was similarly unable to locate any allegation in the Complaint regarding the shed relating to "the tilling of soil and raising of crops, or keeping or raising domestic animals."

7

or legally that Mr. Richards' conduct fell within an exception to the Utah Governmental Immunity Act because he acted or failed to act through "willful misconduct." As a result, the court need not address the arguments in the Objection regarding the second part of the test, namely Mr. Richards' alleged awareness that his misconduct "will probably result in injury."[45] Summary judgment in favor of Mr. Richards in his individual capacity on the conversion claim is appropriate.

As outlined above, Mr. Anderson has not shown that Tooele County permitting and inspection requirements authorized by state statute conflict with statutory exemptions in the State Construction Code. Further, Mr. Anderson's failure to factually demonstrate a conforming agricultural use for his structure, as well as his failure to establish that Mr. Richards intentionally and deliberately acted to deprive Mr. Anderson of a legal right, also warrants summary judgment on the conversion claim in favor of Mr. Richards in his official capacity.

### III. Mr. Anderson's Third Cause of Action Regarding Seizure Under the Fourth Amendment Fails.

The R. & R. concludes that no Fourth Amendment violation occurred because the "Stop Work Order" did not, as a matter of law, constitute a "meaningful interference with an individual's possessory interests in that property."[46] Mr. Anderson's Objection to this conclusion was made in a section titled "Seizure – Conversion" and relied on *In re Ogden* to prove "seizure as a matter of law."[47] *In re Ogden* is a bankruptcy case that discusses the definition of conversion

---

[45] Additionally, neither Mr. Anderson's opposition to Mr. Richards' Motion for Summary Judgment nor his Objection cite to any record evidence that Mr. Richards was aware of either misconduct or of the likelihood of injury. Even if the court were to consider Mr. Anderson's unsupported statements that Mr. Richards "was warned five times that the 'Stop Work Order' was unlawful and illegal," Objection at 4, Mr. Anderson's "warnings" would be insufficient as a matter of law to demonstrate that Mr. Richards knew that performing his job duties by delivering the Notice of Violation amounted to knowing misconduct. Throughout the briefing, Mr. Anderson's argument is that Mr. Richards should have known, but that is not the standard.
[46] R. & R. at 7, citing *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).
[47] Objection at 4.

8

under Utah law as it relates to an allegedly improper disbursement of funds.[48] It does not discuss or have any bearing on a Fourth Amendment seizure analysis. The remainder of Mr. Anderson's Objection to the R. & R.'s conclusion regarding the Fourth Amendment focuses on an analysis of Utah state law conversion principles and does not engage with the R. & R.'s Fourth Amendment analysis or case law.[49] Finding no clear error, the court thus adopts the R. & R.'s analysis and grants summary judgment in favor of Mr. Richards in both his individual and official capacity as to the third cause of action for violation of the Fourth Amendment.

### IV. Mr. Anderson's Fourth Cause of Action for Due Process Violation Under the Fourteenth Amendment Fails.

The R. & R. recommends granting Mr. Richards summary judgment on Mr. Anderson's due process claim, first, because Mr. Anderson fails to show that he has a protectable due process liberty interest in building his structure, and second, because he was afforded an appropriate level of due process but chose not to engage in it.[50] Mr. Anderson objects because he "has a liberty interest to build his shed without Tooele County interference," because "[h]e has a liberty interest to use his shed for agricultural purposes, and because "he has a property interest in the shed because personal property is protected under the Fifth Amendment."[51] Mr. Anderson also rejects the idea that he had any duty to undergo the Tooele County appeals process, arguing it would subject him to "unconstitutional agency authority."[52]

---

[48] 314 F.3d 1190, 1200 (10th Cir. 2002).
[49] Objection at 3–7.
[50] R. & R. at 9–10.
[51] Objection at 8.
[52] Objection at 9.

### A. Mr. Anderson Did Not Have a Protectable Property or Liberty Interest in His Structure.

"The Fourteenth Amendment proscribes a state from, among other things, depriving a party of 'property without due process of law.'"[53] "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."[54] "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest."[55]

"Property" in the Fourteenth Amendment due process context is defined as "'a legitimate claim of entitlement' to some benefit."[56] "An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'"[57] Rather, "[p]roperty interests 'are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"[58] So, "a right to a particular decision reached by applying rules to facts constitutes 'property,'" and in a municipal land use regulation case, the question of law is "whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs."[59] In other words, the "analysis centers on the degree of

---

[53] *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (citing U.S. Const. amend. XIV, § 1).
[54] *Id.* (citing *Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000), *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) and *Archuletta v. Colorado Dept. of Institutions, Div. of Youth Serv.*, 936 F.2d 483, 490 (10th Cir. 1991)).
[55] *Id.* (citing *Weathers v. West Yuma County Sch. Dist. R-J-1*, 530 F.2d 1335, 1340–42 (10th Cir. 1976) (absence of a protectable property interest foreclosed further inquiry into plaintiff's procedural and substantive due process claims) (citing *Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 5 (7th Cir. 1974) (Stevens J.) absence of a property interest was fatal to plaintiff's procedural and substantive due process claims))).
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.* (citing *Norton v. Village of Corrales*, 103 F.3d 928, 931–32 (10th Cir. 1996)).

discretion given the decisionmaker and not on the probability of the decision's favorable outcome."[60] Thus, Mr. Anderson must demonstrate "that a set of conditions exist under state and local law, 'the fulfillment of which would give rise to a legitimate expectation'"[61] that Mr. Richards or Tooele County would approve his building permit or the lack of need for one.

The R. & R. relies on the insufficiency of Mr. Anderson's agricultural zoning argument. This court agrees. Given the multiple potential uses for the structure alleged in the Complaint, no reasonable jury could find that Mr. Anderson could have a legitimate expectation that Mr. Richards or Tooele County would approve him building an undefined structure without a permit. This court has already found that Mr. Anderson has not made an evidentiary showing for purposes of summary judgment that he sought to build a shed for agricultural purposes. This is fatal to his due process claim because he cannot show a protectable property interest in building an undefined structure without a permit. There are no undisputed material facts that demonstrate Mr. Anderson was entitled to an exemption from the permitting requirements. His Objection does not explain why he has a property or liberty interest; it assumes facts about the purpose of the structure as a shed without support from the record that the court can accept, and merely asserts repeatedly that he is sure he has a protectable property interest. These objections are insufficient to demonstrate that Mr. Anderson has a protectable property interest.

### B. Mr. Anderson Was Afforded Sufficient Due Process and Was Not Subject to Unconstitutional Agency Authority.

Even if Mr. Anderson had shown a protectable property interest, the R. & R. concluded that Mr. Anderson chose not to appeal the "Stop Work Order" under Tooele County Code § 14-2-5 and has not demonstrated that he did not receive sufficient due process.[62] Mr. Anderson

---

[60] *Id.* (citing *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir. 1991)).
[61] *Id.*
[62] R. & R. at 11.

11

objects that he had "no duty to use Tooele County appeal process" under the doctrine of "unconstitutional agency authority."[63] The two cases Mr. Anderson cites in support are inapposite. He cites *Knick v. Township of Scott, Pennsylvania*[64] for the principle that "a person has no duty to go to a State or municipal proceeding prior to filing a complaint in federal court."[65] He cites *Axon Enterprise, Inc. v. Federal Trade Commission*[66] for the principle that he "had no duty to go before a Tooele proceeding," which would subject him to "'unconstitutional agency authority'—in a 'proceeding by unaccountable Tooele locals, that know nothing about collateral constitutional law issues.'"[67]

*Knick* held that a property owner who has suffered a taking under state law need not first resolve his just compensation claim in state court prior to bringing a federal takings claim under the Fifth Amendment in federal court.[68] This case does not address due process claims under the Fourteenth Amendment and whether a claimant was afforded adequate due process. *Axon*, on the other hand, held that the review provisions set forth in the SEC and FTC federal agency statutes do not preclude federal question jurisdiction over constitutional claims challenging the structure or existence of the SEC or FTC.[69] Here, there is no federal agency review procedure at issue and no questions raised regarding jurisdiction. Thus, the cases are inapposite, and Mr. Anderson's Objection does not establish a legal basis for overturning the R. & R.'s conclusion that Mr. Anderson was offered adequate due process, even if he chose not to avail himself of it. Mr. Richards in both his individual and official capacities is granted summary judgment on Mr. Anderson's fourth cause of action for a due process violation under the Fourteenth Amendment.

---

[63] Objection at 8–10.
[64] 139 S.Ct. 2162 (2019).
[65] Objection at 9.
[66] 143 S. Ct. 890 (2023).
[67] Objection at 9–10.
[68] *Knick*, 139 S.Ct. 2162 (2019).
[69] *Axon*, 143 S.Ct. 890 (2023).

### V. The Objection States No Facts or Law that Preclude Summary Judgment Against Mr. Anderson's Fifth Cause of Action for a Fifth Amendment Taking.

The R. & R. concludes that a physical taking under the Fifth Amendment occurs "when [the government] uses its power of eminent domain to formally condemn property,"[70] or "when the government takes possession of property without acquiring a title to it, or when the government occupies property, for example, by flooding property when building a dam."[71] Mr. Anderson argues that under Supreme Court jurisprudence, the "Stop Work Order" issued in this case constitutes both a physical and a regulatory taking.[72] Mr. Anderson fails to assert facts to support a physical taking under these definitions. Rather, citing *Cedar Point Nursery v. Hassid*,[73] he argues that the "Stop Work Order" resulted in a physical taking because the regulation was the "by whatever means" instrument that restricted his ability to use his own property.[74] Mr. Anderson's physical takings argument is not supported by *Cedar Point*. In *Cedar Point*, a California access regulation required an employer to allow labor "union organizers onto their property for up to three hours per day, 120 days per year."[75] This was a physical invasion of property that has no analogy to the facts here, where the "Stop Work Order" did not result in condemnation, possession, or occupation of the property by the government or a third party on the government's authority.

Rather, as correctly noted in the R. & R., under these facts the takings analysis must be focused on whether a regulatory taking occurred. "[I]f regulation goes too far it will be

---

[70] R. & R. at 11 (citing *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021)).
[71] *Id.*
[72] Objection at 1–3, 5–6, 10–18.
[73] 141 S.Ct. 2063, 2071 (2021) ("The essential question [when determining whether a taking occurred] is whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property.").
[74] Objection at 1–2.
[75] *Cedar Point*, 141 S.Ct. at 2069.

recognized as a taking," and such regulation may include zoning restrictions.[76] "A per se regulatory taking occurs where 'government requires an owner to suffer a permanent physical invasion of her property' or a regulation 'completely deprive[s] an owner of 'all economically beneficial us[e]' of her property.'"[77] The facts here do not show permanent physical invasion of the property. Mr. Anderson objects, however, to the R. & R.'s finding that he "has not been completely deprived of all economic benefit of his property."[78]

The R. & R. concluded that "Plaintiff has not been completely deprived of all economic benefit of his property . . . Rather, other uses are available to Plaintiff, and even the uses Plaintiff now intends are not foreclosed if he complies with regulations."[79] The "Stop Work Order" in the record demonstrates that the actions the county required Mr. Anderson to comply with are limited, namely, to (1) stop work, (2) remove improvements, and (3) make "application for and obtain the required Building Permit, and other associated approvals."[80] Other than repeating his arguments that he should not be required to comply with a permitting process, which the court addresses in the due process section above, Mr. Anderson fails to make a valid argument that the government deprived him of "all economic benefit of his property." Mr. Anderson argues instead that the county's enforcement of a building code results in a long chain of consequences depriving him of the ability to finish building his shed, stopping him from putting solar panels on the roof of the shed, making it impossible to pump his well, so that he cannot show the well has

---

[76] R. & R. at 11 (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922) and *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387–388 (1926)).
[77] R. & R. at 12 (citing *Britton v. Keller*, 851 F. App'x 821, 824 (10th Cir. 2021) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)).
[78] R. & R. at 12.
[79] R&R at 12 (citing *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127 (1985) ("A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired.")).
[80] ECF No. 13-2 at 2.

been put to beneficial use, which makes it so he cannot get a permit to drill another well across the street on his other twenty acres, which in turn renders his property valueless, because land in a desert without water is useless and worthless.[81] He calls this a "reverse" or "inverse flooding" scenario, in which he equates this chain of events as regulation that physically deprives him of the economic benefit he seeks from his property.[82] However, that is not the standard.

The cases to which Mr. Anderson cites[83] do not support his argument that a regulatory taking occurs when an owner's preferred use potentially cannot be realized as a result of a zoning regulation, especially in a case like this one, where Mr. Anderson has not been denied a building permit but rather simply refuses to apply for one. Mr. Anderson has not demonstrated that the regulation has deprived him of all economically beneficial use of his property.

Finally, Mr. Anderson objects that he should not be required to "give up his constitutional right to build a shed by conceding to Mr. Richards' extortion demands,"[84] namely that he seek a permit from Tooele County. He cites to *Southern Pacific Co. v. Denton*[85] and *Frost & Frost Trucking Co. v. Railroad Comm'n of Cal.*[86] in support of his argument that he should not be required to give up what he deems to be a constitutional right (such as the right to build a shed on

---

[81] Objection at 12–13. His citation to *Nectow v. City of Cambridge*, 277 U.S. 183 (1928) is not availing, as the case is merely a specific example of a situation when a court invalidated a zoning application to a tract of land because the facts demonstrated that the restriction did not "bear a substantial relation to the public health, safety, morals, or general welfare." *Id.* at 189. Mr. Anderson has not shown how the case applies to the facts here.
[82] *Id.* at 14.
[83] *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 131 (1978) (application of the Landmarks Law to airspace above Terminal property did not constitute a taking through diminution in property value alone); *Palazzolo v. Rhode Island*, 533 U.S. 606, 631–32 (2001) (regulation that restricted owner's preferred use of wetlands tract and left parcel with permission to build a residence on an upland portion of the track did not deprive landowner of economic use of entire parcel to support a takings claim). Further, the cases Mr. Anderson cites in support of his "reverse" or "inverse flooding" arguments are inapposite, as in each of them government actions resulted in a physical invasion of the property. *See The Estate of E. Wayne Hage and the Estate of Jean N. Hage v. The United States*, 82 Fed. Cl. 202, Case No. 91-1470L (Fed. Cl. June 6, 2008), *rev'd in part, vacated in part by Estate of Hague v. U.S.*, Fed. Cir., July 26, 2012 (constructing fences, diverting water from ditches); *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23, 38 (2012) (recurrent flooding); *United States v. Cress*, 243 U.S. 316, 327-328 (1917) (periodic overflow); *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) (easement).
[84] Objection at 19.
[85] 146 U.S. 202, 207 (1892).
[86] 271 U.S. 583, 592-593 (1926).

15

agricultural land without a permit) as a condition precedent to enjoying that privilege. This, he argues, amounts to regulation that goes too far and should be recognized as a taking.

The case law he cites is inapposite. In *Southern Pacific*, the Supreme Court invalidated a Texas statute that required a foreign corporation doing business in the state to agree, as a condition precedent to doing business in the state, that it would not remove any suit from a Texas state court to a Circuit Court of the United States in violation of federal diversity jurisdiction statutes.[87] In *Frost*, the Supreme Court invalidated a California statute that required private transportation carriers, as a condition precedent to using public highways, to assume the duties and burdens of a common carrier rather than merely "secure a certificate of public convenience and become subject to regulations appropriate to that kind of a carrier."[88] Here, the court has previously outlined the flaws in Mr. Anderson's argument that U.C.A. § 15A-204(8) and (11) demonstrate that he has been subjected to a taking. He has not, for the reason stated *supra*. These cases do not support Mr. Anderson's argument. Accordingly, the court overrules the objection and grants Mr. Richards summary judgment on Mr. Anderson's fifth cause of action in both his individual and official capacities.

### VI. Mr. Anderson Does Not Object to the R. & R.'s Disposition of the Remaining Claims

Mr. Anderson does not object to the R. & R.'s disposition of his sixth, seventh, and eighth causes of action. Accordingly, the court adopts the reasoning of the R. & R. and grants Mr. Richards in both his individual and official capacities summary judgment on claims six, seven, and eight.

---

[87] *Southern Pacific*, 146 U.S. at 207.
[88] *Frost*, 271 U.S. at 592.

**ORDER**

IT IS HEREBY ORDERED that the Report and Recommendation is ADOPTED. Accordingly, Plaintiff Greg Anderson's Motion for Partial Summary Judgment[89] on his Fourth and Fifth causes of action is DENIED and Defendant Jim Richards' Motion for Summary Judgment[90] is GRANTED.[91]

Signed July 18, 2023.

BY THE COURT

_____
David Barlow
United States District Court Judge

---

[89] ECF No. 13.
[90] ECF No. 16.
[91] R. & R. at 1.